Ziane Cherif BENZIANE, Petitioner,

v.

UNITED STATES of America, Immigration And Naturalization Service, Janet Reno, U.S. Attorney General, Joseph R. Greene, District Director of Denver District INS, Respondents.

Civil Action No. 96–K–2326.

United States District Court,
D. Colorado.

April 1, 1997.

Lane McFee, Denver, CO, for Petitioner.

Richard Kaufman, Asst. U.S. Atty., Denver, CO, Christine A. Bither, Office of Immigration Litigation Civil Div., U.S. Dept. of Justice, Washington, DC, for Respondents.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Petitioner Ziane Cherif Benziane, an Algerian citizen, entered the United States on a visitor's visa in 1992. He has been living illegally in the United States since July 1994, when his appeal from a denial of asylum was dismissed by the Board of Immigration Appeals and a final deportation order was entered against him. He is currently in INS custody and is scheduled to be tried on charges of felony theft in Denver District Court on April 24, 1997.[1]

Cherif was taken into INS custody on September 26, 1996, and the INS attempted to execute the final deportation order on October 2, 1996. Cherif's counsel filed a petition for writ of habeas corpus and an emergency motion for temporary restraining order on Cherif's behalf the following day. I granted the motion and ordered Cherif returned to

---

1. Cherif was convicted on these charges in February, but the conviction was vacated based on the trial judge's failure to read a jury instruction.

the United States pending resolution of his habeas petition. *See* Order, (filed 10/3/96).

I dismiss the petition, deny the request for injunctive relief and dissolve the TRO.

## I.  BACKGROUND.

Cherif entered the United States on a visitor visa on April 21, 1992. In October 1992, based on an apparent affinity for, but unwillingness to pay for, men's suits, Cherif was arrested in Virginia on charges of grand larceny. He pleaded guilty to accessory to grand larceny, and was sentenced to 12 months in prison, 11 of which were suspended.

On November 6, 1992, Cherif pleaded guilty to attempt to commit petit larceny in New York. While in New York, the INS initiated probation proceedings against Cherif based on his overstaying his visitor's visa. Cherif was convicted of petit larceny in New York on February 9, 1993.

Cherif applied for asylum in December 1993. An immigration judge denied the application, finding Cherif had failed to establish a well founded fear of persecution. The Board of Immigration Appeals (BIA) affirmed the IJ's decision in July 1994 and the Tenth Circuit affirmed the BIA in August 1995. A petition for rehearing was denied in November 1995.

On January 25, 1996, Cherif married Jacqueline Lovine (now Jacqueline Cherif), a U.S. citizen. On February 14, 1996, he received a Notice of Country to which Deportation Directed from the INS.

Cherif was taken into INS custody on September 26, 1996. On October 2, 1996. Cherif claims his counsel spoke with an INS official and was "led to believe" Cherif would not be deported for at least 14 days. At the time, Cherif's trial on the felony theft charge was set for October 15 and Cherif claims his counsel was told the district attorney intended to go forward with the trial. The INS denies these statements were made to Cherif's counsel.

The INS attempted to execute the deportation order the next day and put Cherif on a plane for Algeria. Cherif's counsel immediately filed a Complaint for Declaratory and Injunctive Relief and Petition for Writ of Habeas Corpus With Stay of Deportation together with a Motion for Temporary Restraining Order and Preliminary Injunction to Stay Deportation From the United States. I granted the TRO and Cherif was returned to the United States.

On October 21, 1996, Cherif filed an Amended Complaint of Habeas Corpus. In his Amended Complaint, Cherif purports to challenge Defendants' "pattern and practice" of "deliberately supplying" his counsel with misleading information on the morning of his departure, which prevented him from obtaining an administrative stay of deportation; "conspiring" to remove him from the United States surreptitiously without allowing him to contact counsel; endangering his life by purposefully placing his asylum application, anti-Algerian propaganda and other "dangerous materials" in his luggage without permission; forcing him to travel with leg and hand chains; denying him food until his return trip from Brussels; and forcing him to sleep on the floor at JFK. The INS contends Cherif's allegations are completely unfounded.

On February 11, 1997, Cherif filed a motion to reopen his deportation proceedings with the BIA. This motion remains pending.

On February 20, 1997, Cherif was convicted of felony theft in Denver District Court. The conviction was vacated and a retrial was set for April 24, 1997. On February 24, 1997, the INS approved Jacqueline Cherif's I–130 petition of alien relative. This approval is an administrative first step in the status adjustment process, but does not alter anything with respect to the existing deportation order.

## II.  JURISDICTION.

Cherif invokes general habeas corpus jurisdiction under 28 U.S.C. § 2241 as well as the general jurisdiction granted district courts to review causes of action arising under the Immigration and Nationality Act (INA). *See* 8 U.S.C. §§ 1105a(a)(9)(INA habeas jurisdiction) and 1329 (general jurisdiction). While the grants of jurisdiction under the INA have always been subject to various statutory and regulatory limitations, Con-

gress severely limited judicial review and habeas jurisdiction over immigration matters in 1996.

On April 24, 1996, President Clinton signed the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214 (AEDPA). Relevant provisions of the AEDPA are contradictory and confusing. For example, § 401(e) of the Act purports to amend provisions regarding judicial review of deportation orders at 8 U.S.C. § 1105a(a) by striking subparagraph (10), which provided for custody review by habeas corpus. Section 440(a) of the Act, however, purports to "amend" subparagraph (10) to render final orders of deportation against aliens who have committed certain crimes (including those for which Cherif has been convicted in New York and Virginia) nonreviewable in habeas corpus.

The confusion is of little consequence because, in September 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. 104–208, 110 Stat. 3009 (IIRIRA). Section § 306(b) of IIRIRA repealed § 1105a(a) in its entirety. Provisions relating to judicial review of immigration orders and decisions of the Attorney General applying the INA now appear at 8 U.S.C. § 1252(b), as amended by IIRIRA.

Section 306 of IIRIRA rewrote all of 8 U.S.C. § 1252 (§ 242 of the INA) and governs judicial review of immigration matters. Pursuant to § 306, judicial review of immigration matters is limited as follows:

— With the exception of orders issued without hearing denying an alien entry into the United States pursuant to § 1225(b)(1), final orders of removal are reviewable only by the court of appeals pursuant to 28 U.S.C. § 158. 8 U.S.C. § 1252(a)(1).

— Subsection (b) provides that review of "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States ... shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).

— Section 1252(b)(6) provides that any pending motions to reopen or reconsider a removal order are to be consolidated with the review of a final order itself.

— Denials of discretionary relief (including INS decisions regarding voluntary departure and the adjustment of status based on marriage or other family relationship), orders issued against criminal aliens, and exclusion orders of immigration judges based solely on certification that an alien has an excludable disease are "not subject to judicial review" by any court. 8 U.S.C. § 1252(a)(2).

— Habeas relief is available only for review of orders of an immigration officer under § 1225(b)(1), and then is limited to determinations of whether (A) petitioner is an alien; (B) whether petitioner was removed pursuant to § 1225(b)(1); and (C) whether petitioner can prove he is an alien lawfully admitted for permanent residence, has been admitted as a refugee, or has been granted asylum. 8 U.S.C. § 1252(e)(2).

Section 1252(f) restricts courts' ability to enter injunctive relief in favor of an alien. Specifically, no court may enjoin the removal of an alien pursuant to a final order "unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law."

— Other than the types of limited review authorized in § 1252, "no court shall have jurisdiction to hear any cause or claim by or behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g).

Were IIRIRA to apply in this case, I would lack jurisdiction to proceed on several grounds. Under IIRIRA, Cherif's only vehicle for relief would be through a direct appeal of his final deportation order to the Tenth Circuit Court of Appeals. See 8 U.S.C. § 1252(a)(1), (b)(9). He would have no right to habeas relief under § 1105a(a) and would not qualify for habeas relief under § 1252(e)(2). However, even a direct appeal

to the Tenth Circuit would be precluded in Cherif's case because, as an alien who has been convicted of a crime of "moral turpitude," he would be barred from initiating such an appeal by operation of § 1252(a)(2)(C).

As an independent basis for the unavailability of review, Cherif's claims would be unreviewable by "any court" under § 306(g) (8 U.S.C. § 1252(g)) because they arise from a decision by the Attorney General to "commence proceedings," "adjudicate" or "execute" a removal order.[2]

Accordingly, Cherif devotes the majority of his legal argument in support of his petition arguing (1) IIRIRA does not apply to his claims; and (2) if it does apply, that its preclusion of judicial review and virtual elimination of the right to habeas corpus violates the Due Process Clause and Article III of the Constitution.[3]

### A. *Effective Date.*

■ The general effective date for IIRIRA's amendments, as expressed by IIRIRA § 309(a), is "the first day of the first month beginning more than 180 days after the date of the enactment of this Act," or April 1, 1997. While Cherif argues the effective date of the IIRIRA amendments have "yet to be determined," I agree with the Seventh Circuit Court of Appeals that, when IIRIRA becomes effective on April 1, subsection (g), by its own terms, will apply to "'all past, pending, or future exclusion, deportation, or removal proceedings'" initiated under the INA. *Lalani v. Perryman,* 105 F.3d 334, 336 (7th Cir.1997) (quoting IIRIRA § 306(c)); *accord, Cervantes v. Perryman,* 954 F.Supp. 1257, 1260–61 (N.D.Ill. 1997). *But see Vakalala v. Schiltgen,* 1997 WL 102501 (N.D.Cal. Feb.26, 1997) (not reported in F.Supp.) (ruling jurisdictional limitations of § 1252(g) became effective upon date of IIRIRA's enactment, September 30, 1997).

Accordingly, as of April 1, 1997, I lack jurisdiction to hear any cause or claim filed by Cherif arising out of the INS's decision to execute his deportation order on October 3, 1996.

### B. *Constitutionality of IIRIRA.*

Cherif's assertion that the virtual elimination of habeas relief resulting from the enactment of IIRIRA is unconstitutional gives me greater pause. I note that in *Kolster v. INS,* 101 F.3d 785 (1st Cir.1996), a decision issued before IIRIRA's enactment, the First Circuit Court of Appeals concluded the AEDPA's elimination of habeas relief for aliens who had committed certain types of crimes was constitutional *only because* such relief remained available under 28 U.S.C. §§ 2241 and 1651. *Kolster,* 101 F.3d at 790–91 & n. 4 (relying on INS's assertion in that case that elimination of right to habeas review in § 1105a(a)(10) did not impair the ability of the federal courts to engage in such review under general habeas provisions). IIRIRA goes dramatically further, precluding all aliens, by operation of § 1252(g), from bringing "any cause or claim" arising out of removal or deportation proceedings in "any" court. Presumably, this includes habeas petitions filed pursuant to 28 U.S.C. § 2241. The directive in § 1252(a)(2) that "no court shall have jurisdiction to review" a denial of discretionary relief by the INS, even if that denial was shown to be an abuse of discretion, also raises Article III concerns.

I find that I need not reach these issues, however, because Cherif's allegations and prayer for relief do not state a cognizable habeas corpus claim.

### III. *NO COGNIZABLE CLAIM FOR RELIEF IN HABEAS.*

■ Because district courts were without jurisdiction even before enactment of the AEDPA and IIRIRA to hear direct challenges to final orders of deportation, Cherif

---

**2.** In addition, I would be precluded by § 1252(f) from granting Cherif any stay of deportation and my October 3, 1996 temporary restraining order would be invalid.

**3.** Cherif also argues the AEDPA's amendment of § 1105a(a)(10) to preclude habeas relief for

aliens convicted of certain crimes is inapplicable to him because he is not an "alien terrorist." Because the IIRIRA repealed § 1105a(a)(10) as amended by the AEDPA, I do not reach this issue.

claims he is not challenging his deportation order on its merits. Instead, Cherif purports to be challenging the allegedly unlawful and unconstitutional conduct of certain INS officials in attempting to execute that order. Specifically, Cherif claims the INS (1) violated due process and his Sixth Amendment right to counsel by attempting to deport him without notifying his attorney; (2) endangered his life and violated due process and his right to privacy under the First and Fifth Amendments of the Constitution by including his asylum application and anti-Algerian government literature in his luggage; and (3) subjected him to cruel and unusual punishment by depriving him of food during the return flight from Algeria and making him sleep on the floor at JFK airport in New York, in violation of the Eighth Amendment to the Constitution.

The relief Cherif seeks, however, is unrelated to the alleged constitutional violations. Cherif does not seek an end to the alleged "illegal government conduct" on behalf of himself or others,[4] c.f. *Haitian Ctrs. Council. Inc. v. Sale*, 823 F.Supp. 1028, 1045–49 (E.D.N.Y.1993) (seeking release of improperly detained HIV-positive Haitian refugees), but rather a stay of deportation so that he may pursue what he claims are newly available administrative remedies related to his marriage to a United States citizen and changed country conditions in Algeria. Cherif neither seeks to "right" the wrongs he claims give rise to habeas review nor to challenge the deportation order pursuant to which he is being held. Under these circumstances, habeas review is unavailable.

Before enactment of the AEDPA and IIRIRA, 8 U.S.C. § 1105a(a)(9) (later renumbered (10)) allowed "any alien held in custody pursuant to an order of deportation [to] obtain judicial review thereof by habeas corpus." While courts in other circuits allowed aliens to make unrestricted allegations in § 1105a habeas petitions, the Tenth Circuit interpreted § 1105a as allowing only for claims cognizable under traditional habeas proceedings. *See Galaviz–Medina v. Woo-*

ten, 27 F.3d 487, 492 (10th Cir.1994). Assuming, for the sake of argument, that Cherif could meet the "in custody" and exhaustion prerequisites for habeas jurisdiction and was not subject to the AEDPA's exclusion of aliens who have been convicted of certain crimes, his collateral attack on the conditions of his detention and the conduct of INS officials in attempting to deport him would nevertheless remain limited by the nature of habeas relief. *Id.* at 494.

■ Section 2241 of title 28, United States Code, governs habeas corpus proceedings. Under § 2241, habeas corpus will lie to protect the fundamental liberties guaranteed under the Constitution. 28 U.S.C. § 2241(c)(3) (habeas review is available if one is "in custody in violation of the Constitution or laws or treaties of the United States"). In this case, Cherif does not seek habeas relief to protect or vindicate the constitutional rights he claims were violated on October 2–3, 1996, but rather to obtain an indefinite stay of deportation so that he may seek a change of status based on his marriage and pursue a motion to reopen his asylum proceedings before the BIA. The right to pursue administrative remedies when one is the subject of a valid order of deportation is not a "fundamental liberty" protectible in habeas corpus. Because Cherif seeks no cognizable relief in habeas corpus, his petition would have failed as a matter of law even before enactment of the AEDPA or IIRIRA.

Finally, I find Cherif's efforts to obtain an indefinite stay of deportation while simultaneously declining, lest he face a jurisdictional bar, a direct challenge to the deportation order itself, akin to those of the state court prisoner in *Steffen v. Tate*, 39 F.3d 622 (6th Cir.1994), which were similarly unsuccessful. In *Steffen*, a state prisoner sentenced to death filed a petition for stay of execution so that he could pursue a purportedly novel and newly available state remedy beyond a direct appeal of his underlying conviction. He did not file a petition for writ of habeas corpus because he hoped to reserve, rather than to

---

4. For example, Cherif does not ask that the INS be enjoined from failing to notify his counsel the next time it attempts to deport him, from including his asylum petition in his luggage or from

failing to feed him three square meals. He does not ask that the INS be enjoined from shackling him or that it be required to provide him with a hotel room if his plane is delayed.

exercise and thereby exhaust, his right to federal court review of his conviction on its merits, The trial court granted the stay and the Sixth Circuit reversed, finding Steffen's approach an inappropriate use of the writ. 39 F.3d at 626–27. Steffen's approach, the court concluded, would allow him to come back after the "new" remedy failed to obtain yet another stay "in an infinite regress." *Id.* This, the court stated, "is not the law." *Id.* at 627.

The *Steffen* case forms an appropriate analogy to the case before me. Cherif is using the writ to obtain a stay that was unavailable, even before the enactment of 8 U.S.C. § 1252(f), unless a petitioner was also challenging the merits of his deportation order through a direct appeal or a collateral habeas corpus attack. *See* 8 U.S.C. § 1105a(a) & (a)(3) (stay available upon filing of petition to obtain judicial review of "final orders of deportation"). In order to preserve jurisdiction in this court, Cherif hopes to do neither. Cherif's approach is an inappropriate use of the writ and is rejected.

## IV. *CONCLUSION.*

Effective April 1, 1997, IIRIRA deprives district courts of jurisdiction to consider petitions such as Cherif's because Cherif's claims "aris[e] from the decision or action [of] the Attorney General to ... execute removal orders against [him]." 8 U.S.C.A. § 1252(g) (1997 Supp.). Section 1252(g) explicitly applies to "all past [and] pending" deportation or removal proceedings, including the INS's attempt to execute Cherif's deportation order in October 1996. *See* IIRIRA § 306(c)(1), Div. C of Pub.L. 104–208, as amended by Pub.L. 104–302, § 2(1), Oct. 11, 1996, 110 Stat. 3657.

Even if I IIRIRA did not deprive me of jurisdiction, however, I would lack jurisdiction to grant the relief requested. Cherif's request for a stay of deportation to pursue new discretionary administrative relief without challenging the underlying deportation order does not state a claim cognizable under 28 U.S.C. § 2241 or 8 U.S.C. § 1105a(a)(10) before its repeal. The date of April 1, 1997, therefore has no relevance to this proceeding; it has no talismanic effect. Accordingly,

Petitioner Ziane Cherif Benziane's Complaint for Declaratory and Injunctive Relief and Amended Complaint for Writ of Habeas Corpus are DISMISSED, and the temporary restraining order issued October 3, 1996, is DISSOLVED.